THE ILLINOIS MUTUAL FIRE INSURANCE COMPANY, plaintiffs in
error, *v.* THE MARSEILLES MANUFACTURING COMPANY,
defendants in error.

## *Error to Madison.*

If a substantial amendment of a declaration is made, the defendant is entitled to a
continuance, without being required to show that the party is surprised by
the amendment.

In an action by a Manufacturing Company against an Insurance Company upon po-
licies of insurance, the defendants filed their plea of *non assumpsit*, with notice
of special matter to be given in evidence under the plea, to wit: that the plain-
tiffs had no title in fee simple, or otherwise, to three eighths of the premises
upon which the insured buildings were erected; that the fact that they had a
less estate than the whole in the premises was fraudulently concealed from the
defendants, in making their application for insurance; that, at the time the po-
licies were issued, and of the making of the premium notes, the premises were
incumbered by mortgage and judgments, &c. upon said three eighths; that cer-
tain mechanics' liens for the erection of said buildings, amounting to eighteen
or twenty thousand dollars, also existed; that said facts were not set forth and
disclosed in either of the applications for insurance, and that the defendants
had no knowledge of such incumbrances at the time of issuing the policies,
which concealment avoided the policies under the 13th section of the Act, en-
titled "*An Act to incorporate the Illinois Mutual Fire Insurance Company;*" that
subsequent to the issuing of said policies, the plaintiffs erected and added to
one of the saw mills insured a furnace, with open boiler, for boiling or pre-
paring shingle blocks for the machine, thereby increasing the risk or hazard
of the insurers, without any additional premium therefor; that said applications
were false and untrue in regard to the value and extent of the flouring mill
insured, the number of stones ready for the manufacturing of flour, &c.; and
that the insured buildings were intentionally destroyed by fire by a person at
that time a member of the plaintiffs' Company: *Held:* that, under this plea and
notice, the defendants had a right to avail themselves of any matter of defence
arising either from the illegality of the insurance; from a non-compliance with
some express or implied warranty or condition; from the want of a proper in-
terest; from misrepresentation or concealment; or from a performance on their
own part of the terms of the policies.

It is a question for the consideration of the jury, whether the addition to one of
several insured buildings of a steam furnace, after the insurance is effected,
increases the risk of the insurers.

A stockholder in a Bank, or Insurance Company, may sell out his stock after
the commencement of the suit, and thereby become a competent witness.

A remote contingency, or the mere expectation of a benefit or payment, will not
disqualify a witness. To render him incompetent, he must in the general have
a legal interest in the event of the suit; and such interest should be certain,
direct, and immediate, as otherwise it goes to his credibility and not to his

competency. A general creditor will be a competent witness, although he swears that he expects his prospects for the recovery of his debt will be increased by the recovery of a judgment in the particular suit.

The rule in regard to the admissibility of persons as witnesses, who are supposed to be interested in the event of the suit, has been very much enlarged, both in the Courts of England and America; so that the general rule may now be stated to be, that the witness will be permitted to testify in all cases where he is not directly interested in the event of the suit, and to allow the objection to go to his credibility, rather than to his competency.

Policies of insurance are within the provision of the 12th section of the Practice Act, and may be read in evidence to the jury without proof of their execution, unless it be denied by plea verified by affidavit.

By the Act incorporating the Illinois Mutual Fire Insurance Company, the charter itself is made a part of the contract of insurance, and the insured, being, by the Act, members of the Company, cannot plead ignorance of its provisions.

At Common Law, a policy of insurance is considered in the nature of a contract of indemnity, and though a declaration thereon does not contain any direct averment of interest, yet a general averment would import an insurable interest, which must be proved at the trial.

If the insured, at the time of the insurance, have a less estate than an unincumbered estate in fee simple in the premises, it is their duty to disclose the fact to the insurers, as otherwise by the concealment of the true nature of their title, a fraud would be practiced upon all the other members of the Company. The omission, therefore, to state in their application that they had such an estate in fee simple, amounts to a warranty that their title is such as is required by the charter. Such warranty operates as a condition precedent to the assured's right of recovery, and a recovery cannot be had upon the policy, without an averment, supported by proof, that such condition has been complied with.

In an action on a policy of insurance against fire, the plaintiff, on the trial, must prove that he had an insurable interest in the premises, before he can recover.

The term *"owner,"* or *"ownership,"* as applied to land, means a fee simple estate.

Where the possession of land alone is relied upon for any legal purpose, in the absence of paper title, it should, in the language of the law, be a *pedis possessio,* an actual occupancy of the premises in question.

ASSUMPSIT in the Madison Circuit Court, brought by the defendants in error, against the plaintiffs in error, upon two policies of insurance. The cause was tried at the May term 1843, before the Hon. James Semple and a jury. Verdict for the plaintiffs below, damages assessed at $10,000, and judgment rendered on the verdict. The various proceedings and testimony in the cause are very fully set forth in the Opinion of the Court.

*S. G. Bailey,* for the plaintiffs in error, made the following points:

1.   The motion by defendants below should have prevailed. They laid the legal ground therefor.

2.   The motion to rule plaintiffs below to give security for costs should have prevailed.

3.   The plaintiffs below did not produce the necessary proof of interest and title in the insured premises to entitle them to recover.   The Court should have rejected the testimony of Woodworth, he being interested.

4.   The plaintiffs below were guilty of misrepresentation and concealment in their applications for insurance.   The policy was, therefore, void.

5.   The applications for insurance set forth a title in fee simple; and such representation amounts to a warranty.   The plaintiffs below, having failed to prove that fact, ought not to recover.

6.   The erecting of a furnace adjoining the mill increased the risk, and no notice and no additional premium paid, avoided the policy.

7.   The introduction of a carpenter's shop, and the stove therein increased the risk, and avoided the policy.

8.   The Court should have given the instructions asked by defendants below.   The refusal thereof, and the giving them as amended by the Court, misled the jury.

9.   For these reasons, the Court should have granted a new trial.

In support of these points, the counsel cited the following authorities: *Gilbert* v. *The N. A. Fire Ins. Co.* 23 Wend. 43; *N. Y. Bowery Fire Ins. Co.* vs. *The N. Y. Fire Ins. Co.* 17 do. 367; Marshall on Insurance, 467, 471; 1 Phillips on do. 93, 95, 214; *Stetson* v. *Mass. M. F. Ins. Co.* 4 Mass. 337; *Fowler* v. *The Ætna Fire Ins. Co.* 6 Cowen, 676; Marshall on Insurance, 335; *Alston* v. *The Mec. Mut. Fire Ins. Co.* 4 Hill's (N. Y.) R. 334; 1 Phillips on Insurance, 286, 290; *Columbian Fire Ins. Co.* v. *Lawrence,* 2 Peters, 25; S. C. 10 do. 508.

Ill. Mutual Fire Insurance Co. *v.* Marseilles Manufacturing Co.

*W. Martin,* for the defendants in error:

Courts will always allow such amendments as will further justice, and the amendment in this case would not surprise the party. *State Bank* v. *Buckmaster,* Bre. 134; also, the numerous cases in 1st, 2d and 3d vols. of Scammon's Reports.

As regards the motion for security for costs, it is an interlocutory order, and in the discretion of the Court, and cannot be assigned for error.

As to the interest of Woodworth, he swore that he had no interest, &c.

There is no averment in the declaration, that plaintiffs had a fee simple in the premises. If such averment were necessary, the objection is waived by pleading, &c.

The deeds offered in evidence misdescribed the property as in eight *west* instead of eight *east,* and were, therefore, inadmissible.

There was no evidence in reference to the first, second and fifth instructions.

Woodworth was agent for both plaintiffs and defendants, and therefore knew all the facts of the case; there was, consequently, no misrepresentation affecting the risk, &c.

As to the 13th section, what is meant by a fee simple estate? If I own a fee simple in one eighth, it is a fee simple.

If there was error in refusing the second instruction, it was obviated by the seventh instruction, which was given.

*J. Butterfield,* for the defendants in error, in continuation.

Woodworth's interest might go to his credibility, but not to his competency. 1 Greenl. Ev. 437; *Locke* v. *N. A. Ins. Co.* 13 Mass. 65. In this case, held that interest is not incompetent, although there should be a recovery on the policy, as his debt would still remain against the Company.

As to the necessity of the plaintiffs proving a fee simple, &c. No such question was raised in the Circuit Court on this point. 1 U. S. Dig. 416. No such proof was necessary. § 132. Ib. 419, § 212. Bill of exceptions confined to points excepted to. There is no error assigned that plaintiff did

not prove a fee simple estate, &c.    *Gilbert* v. *Maggord,* 1 Scam. 472.

Possession being *prima facie* evidence, in case of a policy on a ship no proof of title is necessary.    *Robertson* v. *French,* 4 East. 136.

Plaintiffs aver that they have an interest in the *buildings,* which is a personal chattel.    *Ashmun.* v. *Williams,* 8 Pick. 404; *Curry* v. *Commonwealth Ins. Co.,* 10 do. 541.

As to the motion for a new trial, there was no exception taken to overruling the motion.

No objection was taken in the Circuit Court to the policies on the ground of fraud and concealment.    The jury is to judge of the question of fraud.    *Curry* v. *Com. Ins. Co.,* 10 Pick. 541; *Tyler* v. *The Ætna Fire Ins. Co.,* 10 Wend. 507, 512.

The distinction between the case in the 2d and 10th Peters, and this case, is said to be, that the application in that case described as the property of the applicants; here, not.

The title of the applicant need not be stated in the application.    1 Phillips on Insurance, 287; 1 U. S. Dig. 419, § 208; *Fletcher* v. *The Com. Ins. Co.,* 18 Pick. 419.

As to the point that the application amounted to a warranty, that was a question for the jury, was left to them, and passed upon by them.    1 Phillips on Insurance, 414; 1 Hill's ( N. Y.) R. 417, 418; *The Jefferson Ins. Co.* v. *Cotheal,* 7 Wend. 73, 80, 81.

There was no warranty, unless the condition was inserted in the policy.    Warranty *is* never created by construction, but must appear on the face of the policy.    It may be written either on the face or on the margin.

Nothing can be intended as excepted to, unless shown by the bill of exceptions.    *Humphreys* v. *Collier,* 1 Scam. 53; *Rogers* v. *Hall,* 3 do. 6; *McLaughlin* v. *Walsh,* Ib. 186; *Wilcox* v. *Kinzie,* Ib. 223; *Phelps* v. *Jenkins,* 4 do. 50; 1 U. S. Dig. 412, § 9.

An answer of a defendant in Chancery cannot be read in evidence against another defendant, without also reading the bill.    1 Greenl. Ev. § 551; 1 Phillips Ev. 393.

*N. D. Strong*, for the plaintiffs in error, in conclusion:

The declaration was *substantially* amended, and the defendants were thereby entitled to a continuance, it being presumed that they were surprised thereby.

As to the motion for a continuance; there was not time to take the depositions of witnesses. Jackson's testimony was material to show that the mortgage to him was made, not for, but in expectation of a loan to Kimball.

The release of Jackson was good to divest his interest in the mortgaged premises, but not to prove that the mortgage was given without consideration, and therefore, was not *bona fide*.

Cook would have proved a mechanic's lien, which was not a matter of record.

As to the refusal of the Circuit Court to rule the plaintiffs to give security for costs; the affidavit is in the words of the statute, swearing as to the information and belief of the affiant.

The application is a part of the policy, and therefore the latter was inadmissible in evidence, unaccompanied by the former. 2 Phillips on Insurance, 623.

Whether the declaration avers an interest or not, an interest must be proved in order to measure the plaintiffs' loss. *Candler* v. *Rossiter*, 10 Wend. 488; *Columbian Ins. Co.* v. *Lawrence*, 2 Peters, 25.

As to the declaration, see Hammond's Fire Ins. 113; as to the plea, Ib. 116. The general issue will enable the defendants to avail themselves of illegality and other like matters.

The charter of the defendants is part of the contract of the party. 2 Phillips on Insurance, 645; 1 Hill's (N. Y.) R. 499.

In a suit by a corporation, the plaintiffs must prove every act neccessary to be done, in order to its existence as a corporation. *Fire Dep. of N. Y.* v. *Kip*, 10 Wend. 268.

There was no notice of loss. 2 Phillips on Insurance, 735, 751; *Norton* v. *The R. & S. Ins. Co.*, 7 Cowen, 649; *Mann* v. *The Herkimer M. F. Ins. Co.*, 4 Hill's (N. Y.) R. 187; *Inman* v. *The Western Fire Ins. Co.*, 12 Wend. 452.

As to the question of warranty, see 2 Phillips on Insurance,

752; Hammond's Fire Insurance, 66, 82; *Alston* v. *The Mec. M. Ins. Co.*, 1 Hill's (N. Y.) R. 110; *Burritt* v. *The S. Co. M. F. Ins. Co.*, 5 do. 188; 7 Johns. 217.

The Opinion of the Court was delivered by

YOUNG, J.   This was an action of *assumpsit* commenced by the defendants in error against the plaintiffs in error, in the Madison Circuit Court, at the September term 1842, upon two policies of insurance, for the destruction and loss by fire, of a flouring mill, two saw mills, lath mill, and a shingle machine, situated in the town of Marseilles, and county of La Salle, and which were insured as the property of the defendants in error, by the plaintiffs in error, to the value of $10,000.   The *præcipe* was filed on the 6th day of September 1842, a summons issued thereon on the same day returnable to the September term 1842, which was executed on Benjamin F. Long, as President, and Moses G. Atwood, as Secretary of the "Illinois Mutual Fire Insurance Company," by the sheriff of Madison county, by delivering to each of them a copy, on the 8th day of September, 1842.

On the 12th of May, 1843, the "Marseilles Manufacturing Company" filed in the clerk's office of the said Circuit Court two several declarations in *assumpsit* against the "Illinois Mutual Fire Insurance Company;" the first upon policy No. 763, which is dated the 27th of December, 1841, and by which the sum of $8000 was insured on the flouring mill; and the second on Policy No. 467, and dated the 22d day of February, 1841, by which the sum of $2000 was insured on the two saw mills, the lath mill and shingle machine.   Each declaration contained two counts; the first concluded with an *ad damnum* of $12,000, and the second with damages stated at $3000.

At the May term 1843, and on the 23d day of the month, the defendants below obtained a rule upon the plaintiffs below to show cause by the Monday following, why one of said declarations should not be stricken from the record in the suit; and on the 25th of the same month, leave was given to the plaintiffs below to amend their declaration.   The amend-

ment was made by consolidating the two declarations filed in the cause into one, so as to make it a declaration with four counts, two upon each policy, by striking out the *ad damnum* of the first, the caption of the second, and by changing the amount of the damages, at the conclusion of the second, from $3000 to $12,000.

The declaration as amended, contained two counts on policy No 763, issued by the plaintiffs in error to the defendants in error, by which the flouring mill was insured for the sum of $8000; and two counts on policy No. 467, by which the two saw mills, lath mill, and shingle machine were insured for the sum of $2000. The first policy is dated December 27, 1841, and the second, February, 22, 1841, each to continue for six years from their respective dates. The plaintiffs below also averred the making of the policies, their interest in the property insured, the loss thereof by fire on the 19th of April, 1842, notice to the defendants below within the next thirty days, that the defendant below had refused to rebuild the property destroyed, or to pay the sums insured, and concluded to the damage of the plaintiffs below of $12,000.

On the 29th of May, 1843, the defendants below filed their plea of *non-assumpsit*, with notice of special matter to be given in evidence under said plea at the trial, to wit: that the plaintiffs below had no title in fee simple, or otherwise, to three eighths of the premises upon which the insured buildings were erected; that the fact that the plaintiffs below had a less estate than the whole in the premises, was fraudulently concealed from the defendants below in the applications for insurance; that at the times of issuing the two policies, and the making of the two premium notes, the premises were incumbered by a mortgage and judgments against Lovell Kimball, previous to his conveyance to the plaintiffs below, of three eighths of the real estate upon which the insured buildings were erected; that certain mechanics' liens for the erection of said buildings, amounting to eighteen or twenty thousand dollars, also existed against the plaintiffs below, and were incumbrances upon the said premises; that said facts

were not set forth and disclosed in either of the applications for insurance, and that the defendants below had no knowledge of such incumbrances at the time of issuing the policies thereon; which concealment, the defendants below contend, avoids both the policies, under the 13th section of the Act entitled " *An Act to incorporate the Illinois Mutual Fire Insurance Company;*" that subsequent to the issuing of said policies, the plaintiffs below erected and added to one of the saw mills insured, a furnace, with open boilers, for boiling or preparing shingle blocks for the machine, thereby increasing the risk or hazard of the insurers, without any additional premium therefor; that said applications were false and untrue in regard to the value and extent of the flouring mill, the number of stones ready for the manufacturing of flour, &c.; and that the insured buildings were intentionally destroyed by fire by a person at that time a member of the said "Marseilles Manufacturing Company," &c.

On the 30th of May, 1843, the defendants below filed the affidavit of Moses G. Atwood, Secretary of their Company, and moved the Court for a continuance, for the following reasons: that although this suit was commenced before the September term 1842, no declaration was filed until the 12th of May, 1843, which was the last day on which it could be filed under the statute; that the defendants below could not safely go to trial without the evidence of Ebenezer Jackson, by whom they expected to prove the incumbrance of the insured premises by mortgage, as specified in the notice under their plea of *non assumpsit;* that Jackson resided in Middletown, in the State of Connecticut; that the defendants below had no knowledge of the existence of said mortgage by Kimball to Jackson for $15,000, until after the destruction of the said insured buildings by fire. Also, that they expected to prove by William M. True and Amasa G. Cook, of La Salle county, a distance of two hundred and twenty five miles from the place of holding Court in the said county of Madison, that after the issuing of the said two policies of insurance, and a short time previous to the destruction of the insured buildings by fire, the plaintiffs below

erected adjoining to one of the saw mills, a steam furnace, by which the risk was greatly increased, and that fire had, previously to the destruction of the insured buildings, been communicated to the saw dust from said furnace, and came very near destroying said buildings. Also, that they expect to prove by said Cook, the existence of one of the mechanics' liens mentioned in said notice, for about $3000; that the defendants below had no knowledge of said Mechanics' lien, until the buildings were destroyed; that they expect to prove by the evidence of the recorder of La Salle county, who resides at Ottawa, that the plaintiffs below had no title in fee simple, or otherwise, to three eighths of the premises upon which the insured buildings were erected; that they expect to prove by Lorenzo Leland, clerk of the Circuit Court of La Salle county, who also resides at Ottawa, the existence of certain judgments against Lovell Kimball in that Court, which were liens upon the real estate, upon which the insured buildings were erected, previous to the conveyance of the same by Kimball to the plaintiffs below, to an amount of about $1700; that the amendment of the first declaration on the policy of $8000, by incorporating with it the second declaration for $2000, was a material and substantial amendment, which was calculated to take the defendants below by surprise; for which last mentioned reason, and for the further reason that sufficient time was not allowed to take the depositions of the said witnesses, or to procure their attendance by *subpœna*, or otherwise, the defendants below insisted that they were entitled to a continuance. The motion for a continuance was overruled, and an exception thereon taken to the opinion of the Court.

On the 1st day of June, 1843, and during the continuance of the said May term of the Court, a motion was made on behalf of the plaintiffs in error, upon the affidavit of Moses G. Atwood, to rule the defendants in error to file security for costs, on account of the alleged insolvency of the "Marseilles Manufacturing Company," which motion was also overruled by the Court.

On the 20th of June, 1843, the cause came on for trial by a

jury, who having heard the evidence, arguments of the counsel, and instructions of the Court, returned a verdict for the plaintiffs below for $10,000, damages. The defendants below then entered their motion for a new trial, for the reasons following, to wit:

1. Because the Court refused to give the instructions asked for by the defendants below;

2. Because the Court gave the instructions prayed for by the plaintiffs below;

3. Because the Court admitted improper evidence on the part of the plaintiffs below;

4. Because the Court excluded proper evidence offered by the defendants below;

5. Because the jury gave excessive and unreasonable damages; and

6. Because the jury found contrary to the evidence.

This motion for a new trial was overruled by the Court on the 11th of July, 1843, and a judgment rendered upon the verdict in favor of the plaintiffs below for $10,000, and costs.

On the 11th day of November, 1843, the plaintiffs in error filed in the clerk's office of the Circuit Court, a long bill of exceptions, setting forth the material facts, and opinions of the Court, which occurred during the progress of the trial, and upon which they expect a reversal of the judgment in this Court; but as most of the matters preserved are immaterial in the present controversy between the parties, I will omit to state them, and will notice such portions of the record only, as appear to be necessary to a proper understanding and determination of the cause as submitted by the pleadings.

James H. Woodworth, the first witness sworn on the part of the plaintiffs below, testified that he had no interest in the event of the suit, except as a creditor of the Marseilles Manufacturing Company; that he was an officer of that Company at the time of the loss of the insured property, and expects that his dividend as a creditor of the Company would be increased by a recovery in this suit; thinks the Marseilles Manufacturing Company will be able to pay its debts, if it should fail in this suit.

Benjamin F. Long, as President, and Moses G. Atwood, as Secretary, of the "Illinois Mutual Fire Insurance Company," were next examined on the part of the plaintiffs below, by whom they proved the execution of the two policies, No. 467 and 763, and who further testified that James H. Woodworth, the witness, made the applications for insurance as agent of the Marseilles Manufacturing Company, in both cases.    The policies were then offered as evidence to the jury, and objected to by the defendants below; the Court overruled the objection, and the policies were read as evidence on the part of the plaintiffs below, and an exception taken by the defendants.

The application for insurance on which policy No. 467 was issued, is substantially as follows:

"Application of the Marseilles Manufacturing Company, of Marseilles, in the county of La Salle, for insurance against fire by the Illinois Mutual Fire Insurance Company for the sum of $2000, to wit: on two saw mills, one lath mill, and one shingle machine, valued at $3000, exclusive of land—said mills and machine are situated in the town of Marseilles, and are built of wooden materials—they are all under one roof covering a building forty five feet square—a stove sometimes used in it during the winter, the pipe passing through the roof, secured by sheet iron—said mills stand upon the Illinois river, and are propelled by water—a flouring mill stands twenty feet from the buildings—no other within one hundred feet.    Dated Marseilles, February 12th, 1841.

James H. Woodworth, Treas."

The application for insurance on which policy No 763 issued, is as follows:

"Application of the Marseilles Manufacturing Company of Marseilles, in the county of La Salle, for insurance against fire by the Illinois Mutual Fire Insurance Company for the sum of $8000, to wit: On one flouring mill valued at $30,000 exclusive of land—said building is situated in the town of Marseilles, and is built of stone and wooden materials.   It is situated on the bank of the Illinois river and propelled by water—is 45 by 70 feet on the ground, four stories high with an attic—the fore-bay and basement story are of stone, and the

remainder of wood—contains eight runs of 4½ feet French Burr stones—two smut mills, screens, bolts, &c. complete for the said eight runs of stones—and all other fixtures necessary for country and merchant work. There is no fire kept in said mill—the saw mills already insured by the Company are about thirty feet from said mill, but no other building within one hundred feet. Dated December 18th, 1841.

R. P. Woodworth, Pres't.
James H. Woodworth, Treas."

There is on each of said applications a memorandum to the effect following: "If insurance be wanted on more than one building in the same policy, the amount on each must be named—also, the amount of furniture, goods, &c., must be separately named. Not more than two thirds of the estimated value of any building will be insured—nor more than half the amount of furniture, stock in trade, &c." No. 467 is endorsed "$2000 at 11 per cent., approved February 22, 1841." Benj. F. Long, Pres't.—and No. 763, "$8000 at 11 per cent., approved December 27th, 1841." Benj. F. Long Pres't.

James H. Woodworth, having been recalled, further testified, that the buildings described in the policies were destroyed by fire on the 19th of April, 1842; that the property described in policy No. 467, was worth $3000, and that described in policy No. 763, $20,000; that the flouring mill had eight runs of stones complete, and that the plaintiffs below were the owners of the property insured; that he, the witness, as Secretary, and his brother, R. P. Woodworth, as President of the "Marseilles Manufacturing Company," made the applications No. 467 and 763, for insurance to the "Illinois Mutual Fire Insurance Company;" that the mills insured were situated on Water Lot No. 2, on part of section nineteen (19), township thirty three (33) north, of range five (5) west of the third principal meridian; that he, the witness, was also the agent of the plaintiffs in error to receive propositions for insurance; that he, as such agent, received the propositions numbered 467 and 763, and forwarded them to the Secretary of the plaintiffs in error, and had at that time in his possession a copy of the charter of the "Illinois Mutual Fire Insurance

Company;" that the applications were filled up by him, and that he received the premium notes on the two policies; that he owned three hundred shares of stock in the "Marseilles Manufacturing Company" at the time of the insurance, but sold out his stock before the trial in this suit; that he gave notice of the loss of the insured buildings by fire, as agent of the defendants in error, to the Secretary of the plaintiffs in error within thirty days from the time of its occurrence.

Benjamin F. Long testified, that the plaintiffs in error refused to rebuild the property destroyed by fire; that the agents of the plaintiffs in error had only to receive proposals to insure, and forward them to their office, and if insurance was effected, to receive the premium note, and the per centage, and to deliver over the policy to the insured; that at the time of the loss, the plaintiffs in error held premium notes of the Company, amounting to $80,000 or $100,000. The witness then presented blank forms of the powers of attorney, and instructions to the agents of the "Illinois Mutual Fire Insurance Company," which are not necessary to be stated, but which, in the general, require them to act according to the provisions of the charter, with such specific directions under the by-laws, and regulations, as seem to be necessary to insure a proper execution of their duty under the statute creating the Company.

Lewis Kellenberger was then introduced as a witness by the defendants below, who testified that the insured property was situated on Water Lot, or Block No. two (2), on the North West quarter of section nineteen (19), township thirty three (33) north, of range five (5) west; that he knows its location from inspecting the records of the town of Marseilles; that he was one of the agents of the plaintiffs in error; that his practice was, to receive applications, forward them to the Mutual Fire Insurance Company, receive the policies and deliver them to the insured upon the payment of the per centage, and delivery of the premium note, and then forward the premium note and per centage to the Secretary of the Company.

The defendants below, for the purpose of showing defects in the title of the plaintiffs below, and also, that they had a

less estate than fee simple in the lot and lands upon which the insured buildings were erected, at the time the insurance was effected, produced and offered to read in evidence to the jury, copies of the following described deeds, to wit:

No. 1. From William Munson and Rachel Munson to Robert P. Woodworth and Lovell Kimball, bearing date the 11th of September, 1834, for the South half of the East half of the South East quarter of section thirteen (13), in township thirty three (33) north, of range four (4) east of the third principal meridian, containing forty acres; also, forty acres of the west part of the North fractional half of section nineteen (19), in township thirty three north, of range five (5) east of the third principal meridian. Both of these tracts of land are parts of tracts granted by Congress to the State of Illinois for canal purposes, and donated by the State to Rachel Hall, now Rachel Munson, one of the ladies captured by the hostile Indians during the Black Hawk war. This deed was acknowledged before Joseph Cloud, a justice of the peace of La Salle county, on the 11th of September, 1834, and subsequently recorded in the recorder's office of said county, in Deed Book A., page 267, as appears by the certificate of J. W. Armstrong, recorder, dated 6th June, 1843.

No. 2. A deed from Lovell Kimball and Permelia, his wife, and Robert P. Woodworth and Ann, his wife, to Ebenezer Jackson, of Middletown, Connecticut, for the one undivided eighth part of Water Blocks, No. 1, 2, 3, 4, 5, 6, in the town of Marseilles, La Salle county, being parts of sections No. thirteen, eighteen, nineteen, and twenty four, in township thirty three (33) north, of ranges four (4) and five (5) east of the third principal meridian; also, the one undivided eighth part of a strip of land purchased by the grantors from James Galloway, on the margin of the Illinois river, opposite the town of Marseilles, four rods wide at one end, and eight rods wide at the other; also, the undivided eighth part of four acres of land opposite the said town of Marseilles, near and adjoining the dam erected by the grantors and the other proprietors of Marseilles, across the Illinois

river; and acquired under a writ of *ad quod damnum*, issued from the County Commissioners' Court of La Salle county; also, the undivided eighth part of all the interest of the grantors in and to the water power owned by them, in the said town of Marseilles, or in any manner appertaining to the aforesaid Water Blocks, No. 1, 2, 3, 4, 5, and 6, or to sections No. thirteen, eighteen, nineteen and twenty four; also, the undivided eighth part of any water power or privilege the grantors may have, on account of their ownership of the four acres of land above mentioned; also, the undivided eighth part of any water power or privilege, which they may be entitled to, on account of their ownership of the strip of land purchased from Galloway. This deed is dated the 15th day of July, 1838, was acknowledged by Kimball and wife, before J. Otis Glover, a justice of the peace of La Salle county, the 16th of July, 1838, and by Woodworth and wife, before F. A. Howe, a justice of the peace for Cook county, on the 20th of July, 1838, and recorded in the recorder's office of La Salle county, in Deed Book No. 1, commencing on page 204.

No. 3. A deed from the last mentioned grantors to Josiah Lawrence, of Cincinnati, for the undivided eighth part of all the lands, lots, premises, water power and privileges mentioned and described in deed No. 2, to Ebenezer Jackson, of Connecticut. This deed is dated the 16th of July, 1838, was acknowledged by Kimball and wife, before J. Otis Glover, a justice of the peace for La Salle county, the 16th of July, 1838, and by Woodworth and wife before F. A. Howe, a justice of the peace for Cook county; on the 20th of July, 1838, and recorded in the recorder's office of La Salle county, in Deed Book No. 1, commencing at page 211.

No. 4. A deed from the same grantors to Gurdon S. Hubbard, of Chicago, for an undivided eighth part of all the lands, lots, premises, water power and privileges mentioned and described in deed No. 2, to Ebenezer Jackson, as aforesaid. This deed is dated the 15th of July, 1838, was acknowledged by Kimball and wife, before J. Otis Glover, a justice of the peace of La Salle county, on the 16th of July,

1838, and by Woodworth and wife, before F. A. Howe, a justice of the peace for Cook county, on the 20th of July, 1838, and recorded in the recorder's office of La Salle county, in Deed Book No. 1, commencing at page 207.

No. 5. A deed from Lovell Kimball and wife to the Marseilles Manufacturing Company, dated the 11th of May, 1840, for two undivided eighth parts of so much of Water Lot No. 2, designated on the map of the town of Marseilles, as lies east of a line to be drawn north and south across said lot, fifteen feet west of the west end of the flouring mills now building on said lot by said Kimball, together with two undivided eighth parts of the water power, saw mills, lath mills, and shingle machine, and their appendages, now in operation on said lot; also, two undivided eighth parts of the flouring mills now erecting on said lot; also, three undivided eighths of the water power and premises before described, as is vested in them by virtue of three several deeds, to wit: one from Gurdon S. Hubbard, one from Ebenezer Jackson, and the other from Josiah Lawrence to the said Kimball. This deed contains a great many covenants, stipulations and conditions between the contracting parties which are not necessary to be stated, with the exception of a stipulation in relation to the completion of the flouring mill, which is in the words following, to wit: "And they (the grantors) do further covenant and agree to finish and complete the said flouring mills according to a certain contract existing between Lovell Kimbill and Amasa G. Cook, as soon as said Cook is bound by said contract to complete the same," &c. This deed was acknowledged by Kimball and wife before Amos Holsey, a justice of the peace for La Salle county, on the 11th of May, 1840, and recorded in the recorder's office of said county, in Deed Book No. 4, commencing on page 356.

No. 6. A deed from Robert P. Woodworth and wife to the Marseilles Manufacturing Company, dated the 11th of May, 1840, for three undivided eighth parts of so much of Water Lot No. 2, as is designated on the map of the town of Marseilles, lying east of a line to be drawn north and south across said lot, fifteen feet west of the west end of the flour-

ing mill then building on said lot by Lovell Kimball, together
with the undivided eighth part of the water power, saw mills,
lath mills and shingle machine, and their appendages then in
operation on said lot; and also,.the undivided eighth part of
the flouring mill, appurtenances, &c. This deed was acknow-
ledged by Woodworth and wife before Amos Holsey, a jus-
tice of the peace for La Salle county, on the 8th of Decem-
ber, 1840, and recorded in the recorder's office of said coun-
ty in Deed Book No. 6, at pages 59 and 60.

    To the reading of which said several copies of deeds as
evidence to the jury, the plaintiffs below objected; the objec-
tion was sustained by the Court, and an exception taken to
the opinion, by the defendants below.

    The defendants below, for the purpose of showing an in-
cumbrance upon the real estate upon which the insured build-
ings were erected, then produced and read in evidence to the
jury, without objection, the copy of a mortgage from Lovell
Kimball and wife to Ebenezer Jackson, of Middletown, Con-
necticut, dated the 20th of April, 1839, for five sixteenths of
the water power and water blocks on the Illinois river, in the
town of Marseilles, La Salle county, as described on the re-
corded plat of said town, together with the dam, saw mills,
and flouring mills thereon, &c. This mortgage also conveys
an interest in several leases, and tracts of land, which need
not be recited, as they are not at all material in determining
the issues between the parties. The consideration expressed
by the mortgage, as having been received by the mortgagors,
is stated at $15,000. This mortgage was acknowledged by
Kimball and wife, before Orville Cone, a justice of the peace
for La Salle county, on the 22d of April, 1839, and recorded
in the recorder's office of La Salle county, in Deed Book No.
2, commencing on page 224.

    The defendants below then offered to read in evidence to
the jury, a copy of the answer of Lovell Kimball to the bill
in chancery, filed against him and the Marseilles Manufactu-
ring Company by Amasa G. Cook, in the La Salle Circuit
Court, for the purpose of enforcing a mechanic's lien against
the lands upon which the insured buildings were erected, in

which he, Kimball, admits that he had been the owner of five eighths of the lot mentioned in the complainants' bill, but had disposed of the same to the Marseilles Manufacturing Company, and denies that Cook performed the work either within the time, or in the manner mentioned in their agreement, &c. This answer was sworn to before the clerk of the La Salle Circuit Court the 1st of January, 1842, and contained a clause to this effect: "and the defendant (Kimball) further answering, saith, that the mortgage to the said Ebenezer Jackson in said bill mentioned on the premises, for the purpose in said bill mentioned, is real and not colorable, as pretended by said bill," &c. Kimball afterwards, on the 21st of May, 1842, obtained leave to amend his said answer, and thereupon amended by striking out the above clause. The plaintiffs below objected to the reading of the answer and amendment to the jury; the Court sustained the objection, and the defendants below took an exception to the opinion.

The defendants then offered to read as evidence to the jury a certified statement, by the clerk of the La Salle county Circuit Court, of a number of unsatisfied judgments against Lovell Kimball in that Court, amounting in the whole to $1641·67 cents; for the purpose of showing that they were liens upon the real estate upon which the insured buildings were erected, before the interest of Kimball in the premises was transferred to the Marseilles Manufacturing Company. This statement was also excluded from the jury, and an exception taken to the opinion of the Court thereon.

The defendants then produced and offered to read in evidence to the jury a deed of assignment from the Marseilles Manufacturing Company to John C. Champlin, dated October 1st, 1842, for the benefit of the creditors of said Company, for the purpose of proving the insolvency of said Company, which, on motion, was also excluded from the jury, and an exception thereon taken to the opinion of the Court by the defendants below.

The defendants below then called one Wakefield as a witness, who testified that he was the sawyer of the plaintiffs below, before and at the time of the loss, and worked for them

from October 1841 until the mills were burned; that there was a room used in the mill as a counting room, having a desk and a stove where fire was made and kept in cold weather; that the carpenter's work which had been done for the repairs of the mill, in the mill, when there was no fire, was, while witness lived with and worked for said plaintiffs below, afterwards transferred into the counting room, where the stove was; that the carpenter's work besides repairs on the mill was also done in this room; that a corner cupboard was made in it, and that there were chips and shavings on the floor; that in February, 1842, there was a furnace erected upon a stone pier, which stood in the river; the furnace was built of brick, with a chimney coming through a shed roof of about a foot and a half, which roof joined up to the wall. There was upon the furnace a box faced with iron next to the fire, made tight and designed to steam shingle timber. Witness knew that fire was twice put into this furnace; that there was a plank way from the furnace to the bank, to pass to and from the furnace, and that between the pier and the shore a part of the water of the river flowed under this plank way; that this plank way connected the furnace with the mill yard, where there were chips, saw dust and other combustible substances; that on the Tuesday preceding the burning of the mills, a fire was communicated to the yard between the flouring and saw mills, from the furnace or some other source, but could not say whether from the furnace, or in bringing fire to it, which would, had it not been extinguished by witness, have burnt up the mills; that this furnace increased the risk. Upon being cross examined, the witness further testified that the work which had been done in the mill when there was no fire there, was afterwards done in the counting room where the stove was; that he had known fire in the stove at the time, and after carpenter's work was done in that room; but that the stove had been taken out of the room ten days, or two weeks, before the fire.

The defendants below then called one Winlock who testified that before the insurance was made, the carpenter's work was done in the mill; that afterwards it was done in

the counting room, where the stove described by Wakefield was; that before the insurance, there was nothing in the room where the stove was, but a desk; knows of a corner cupboard made there; that the furnace had fire in it three or four times before the loss; that the furnace was connected with the shore and saw mill by a plank way under which the water flowed; that the chimney of the furnace passed through a shed roof about a foot and a half, that the roof was joined to the mill. Witness believed that the furnace increased the risk; cannot state whether the carpenter's work was done with the knowledge and consent of the owners of the mills or not, and that the last fire made in the furnace was at least two weeks before the mill was destroyed.

James H. Woodworth, being recalled, further testified that, in his opinion, the furnace did not increase the risk, but diminished it; that the furnace had not been used to steam shingle blocks; that it was built upon a pier, and that water passed between it and the mill; thought a furnace was a necessary appendage to the shingle machine; that when the insurance was made there was no furnace built; that an old steaming box, not set, was in the lower room of the mill; but that the furnace had been erected when the mills were burnt.

The plaintiffs below then read in evidence a release dated 'the 15th day of May, 1841, from Ebenezer Jackson, of Connecticut, to Lovell Kimball, of the mortgage heretofore mentioned, and the premises thereby conveyed. Here the testimony closed.

The defendants below then moved the Court for the following instructions to the jury, to wit:

1st. That if from the testimony the jury believe, that at the time of the execution and delivery of the policies sued upon, the plaintiffs below had a less estate than the whole in lot No. 2, in the town of Marseilles, upon which the buildings insured were erected, and the same was not disclosed in the applications of the plaintiffs to the defendants for insurance, they must find for the defendants.

2d. That if the jury believe from the evidence, that at the time application was made by the plaintiffs for insurance, and

the two policies sued upon were issued, the real estate upon which the buildings were erected was incumbered, either by judgment, mortgage, or otherwise, and such incumbrance was not specified, and set out in their applications for insurance, then the jury must find for the defendants.

3d. That if the jury believe from the evidence, that at the time the applications were made for insurance by the plaintiffs, as well as at the times the policies sued upon were issued, there was in the saw mill a carpenter's shop, and the existence of the same was not made known to the defendants at the time of the making of the applications, and the obtaining the insurance by the concealment of that fact, the plaintiffs did not in fairness and good faith state all the material circumstances within their knowledge, which may affect the risk, they must find for the defendants.

4th. That if the jury believe from the evidence, that any alteration has been made in either of the buildings insured, by the proprietors thereof after the insurance had been made thereon, whereby said buildings were exposed to greater risk or hazard from fire, than they were at the time they were insured, then the insurance made upon said buildings was void, unless an additional premium and deposit after such alteration had been settled with and paid to the directors, they must find for the defendants.

5th. If the jury believe from the evidence, that after the issuing of said policies any addition was made to the insured property, which increased the risk, and no notice given to the insurers, such increased risk affects the validity of the policies.

6th. If the jury believe from the evidence, that the proprietors of the insured property removed their work shops from the flour mill where there was no stove, to another part of the mill where there was a stove, and by so doing increased the risk, it will render the policy invalid.

7th. That the representations made by R. P. & J. H. Woodworth, as officers of the Marseilles Manufacturing Company, are part of the policy sued upon, and are a warranty as to the condition of the mill and property insured, and that any de-

viation therefrom, either by not truly representing the state of the risk, or the business carried on which deviate from the representation, will avoid the policy.

8th.   That when the officers of the Marseilles Manufacturing Company applied to be insured, and represented the state of the property and risk sought to be insured, they cannot by so doing never be the agents of the Mutual Insurance Company, but the agents of the plaintiffs.

The fifth and seventh instructions were given; the first, second and sixth refused: the fourth and eight instructions refused as asked for, but given as follows: "that if the jury believe that the alterations mentioned in these instructions were actually made, materially increased the risk, and that no notice of such alterations was given to the defendants, it was a circumstance from which the jury may infer, in their discretion, that the plaintiffs had not acted fairly in the matter." The third instruction was given by inserting the words, "the jury may infer," in the seventh line thereof, next after the word "fact." To which refusal and alterations by the Court the defendants excepted.

The jury returned a verdict in favor of the plaintiffs below for $10,000 damages.   A motion was made by the defendants for a new trial, and overruled, and a judgment rendered upon the verdict, as before stated.

The following are assigned by the plaintiffs in error as causes of error, to wit:

1.   The Court erred in refusing the continuance prayed for.

2.   In not requiring the plaintiffs below to give security for costs.

3.   In admitting the evidence of Woodworth, notwithstanding his interest in the event of the suit.

4.   In admitting the policies to be read to the jury.

5.   In rejecting the evidence of title offered by the defendants below.

6.   In rejecting the assignment from the Marseilles Manufacturing Company to John C. Champlin.

7.   In admitting the release of the mortgage from Jackson to Kimball.

8.  In refusing the instructions asked for by the defendants below.

9.  And in giving the instructions as modified by the Court.

In disposing of the principal matters in issue between the parties, we do not deem it necessary, either to notice all the objections which were raised by the plaintiffs in error, in the Court below, or which have been assigned as causes of error in this Court; but will confine our opinion to such of the questions only, as appear to be necessary to a proper understanding of the cause, and a correct determination of the relative rights of the parties, upon the whole matter as submitted by the record.

The plaintiffs in error contend, in the first place, that the Circuit Court erred in refusing the continuance of the cause at the May term 1843, for the reasons stated in the affidavit of Moses G. Atwood, the Secretary of the Company.  This exception, we think, is well taken; as well on account of a substantial amendment of the declaration at that term, as for the want of sufficient time to procure the testimony of witnesses deemed important at the trial.  Two separate declarations had been filed in the suit; a motion was made to compel the plaintiffs below to elect upon which they would proceed; the plaintiffs thereupon obtained leave to amend; and the declaration on policy 763 was amended by incorporating with it, the two counts of the declaration on policy 467, with suitable alterations to make it a declaration with four counts, embracing the contracts of the parties, and supposed liabilities of the defendants below, under the two policies.  This we consider a substantial amendment of the declaration, and according to the authority of the case of *Covell* v. *Marks*, 1 Scam. 525, the defendants below were entitled to a continuance, without being required to show that they were surprised by the amendment.  In that case, the amendment was made by adding to the description of the note sued upon, the words, "with twelve per cent. interest from the date until paid;" and the Court held, that the defendants, without showing further cause, were entitled to a continuance.

We are also of opinion, upon the other ground, that suffi-

cient time was not allowed after the filing of the declaration, in so important a cause, to have enabled the defendants below, either to have procured the personal attendance of True and Cook, two of the witnesses named in the affidavit, from La Salle county, a distance of two hundred and twenty five miles from the place of trial, by *subpœna*, or to have taken their depositions upon proper notice to the plaintiffs.

Under the plea of the general issue, and the notice under it, the defendants below had a right to avail themselves of any matter of defence arising from the illegality of the insurance, from a non-compliance with some express or implied warranty or condition, from the want of a proper interest, from misrepresentation or concealment, or from a performance on their own part of the terms of the policies. The defendants below stated in their affidavit for a continuance, that they expected to prove by these witnesses, "that after the issuing of the two policies of insurance, and a short time previous to the destruction of the insured buildings by fire, the plaintiffs below erected adjoining to one of the saw mills insured, a steam furnace, by which the risk was greatly increased," &c. Such evidence was material and proper under the issue, it being a question for the consideration of the jury, whether the addition, to one of the insured buildings, of a steam furnace, after the insurance was effected, increased the risk of the insurers or not. *Cary* v. *The Com. Ins. Co.* 10 Pick. 535. For these reasons, without going further into an examination of the arguments of counsel, and the authorities produced in this Court at the hearing, we are of opinion, that the Circuit Court erred in not sustaining the motion for a continuance.

The third cause assigned for error, and to which we will give a passing notice, questions the correctness of the decision of the Circuit Court in admitting the evidence of James H. Woodworth, on account of his supposed interest in the event of the suit: *first*, as a stockholder in the Marseilles Manufacturing Company; and *secondly*, as a creditor of that Company. It appears from his testimony, that he had been a stockholder in the company, but had sold out his stock before the trial in the Court below, and also that he was a credi-

tor of the Company. As to the first objection, the doctrine appears to be well settled, that a stockholder in a bank or insurance company may sell out his stock after the commencement of a suit, and will thereby become a competent witness. 1 Greenleaf's Ev. 437. In regard to the second objection, the question is, whether it shall go to his competency or credibility. He stated in the course of his examination, that he had no interest in the event of the suit, except as a creditor of the plaintiffs below, but expected that his dividend would be increased, as such creditor, by a recovery in this suit; that he believed the Marseilles Manufacturing Company would be able to pay all its debts, notwithstanding the plaintiffs below should fail in the suit: and, upon being recalled upon the stand, after the examination of Wakefield and Winlock, who were introduced as witnesses by the defendants below, in relation to the erection of a steam furnace adjoining to one of the saw mills insured, he further testified, " that the furnace did not increase, but diminished the risk of the insurers." A remote contingency, or the mere expectation of a benefit or payment, will not disqualify a witness. To render him incompetent, he must in the general have a legal interest in the event of the suit; and such interest should be certain, direct and immediate; as otherwise it goes to his credibility, and not to his competency. A general creditor will be competent, although he swears that he expects his prospects for the recovery of his debt will be increased by the recovery of a judgment in the particular suit. 1 Greenleaf's Ev. 437, in note; 6 Cowen, 622; 1 U. S. Dig. 416, § 132; Ib. 419, §212. To have rendered Woodworth incompetent, it should have been shown that the Marseilles Manufacturing Company was insolvent, and unable to pay its debts, if such was the fact. In that event, he would have been directly interested in increasing the funds of the Company by a recovery of the amount insured by the two policies; inasmuch as his dividend as a creditor of the Company would, upon such recovery, be increased in a corresponding proportion.

The rule in regard to the admissibility of persons as wit-

nesses, who are supposed to be interested in the event of the suit, has been very much enlarged within a few years past, both in the courts of England and America; so that the general rule may now be stated to be, that the witness will be permitted to testify in all cases where he is not directly interested in the event of the suit; and to allow the objection to go to his credibility, rather than to his competency.

In this case, Woodworth having ceased to be a stockholder before the trial below, could not as a mere creditor expect any thing more than his debt and interest, if the Company, according to his belief, would be able to pay its debts without a recovery in this suit. He would not depend upon such recovery for the payment of his demand, unless the Company should, contrary to his expectation, turn out in the end to be insolvent; in which event he would be interested to the extent of his dividend. Upon the whole, we think his interest too remote, if he is to be believed, to have excluded him as a witness, and that the Court below decided correctly in permitting his evidence to go to the jury.

In regard to the fourth assignment of error, it is only necessary to say, that under the twelfth section of the Practice Act, the two policies were properly allowed to be read in evidence to the jury without proof of their execution. That section provides, "that no person shall be permitted to deny, on trial, the execution of any instrument in writing, whether sealed or not, upon which any action may have been brought unless the person denying the same shall verify his plea by affidavit," &c. Gale's Stat. 531, 532.

We will now pass over the remaining assignments of error, with the exception of the eighth, which we think presents the main question for revision in this Court. It consists in the refusal of the Court to give the instructions to the jury, which were asked for by the defendants at the trial in the Court below. The first instruction asked for by the defendants below, and which the Court refused to give to the jury, is as follows: "That if the jury believe from the testimony, that at the time of the execution and delivery of the policies

sued upon, the plaintiffs had a less estate than the whole in lot No. 2, in the town of Marseilles, upon which the buildings insured were erected, and the same was not disclosed in the application of the plaintiffs to the defendants for insurance, they must find for the defendants." This instruction, we think, should have been given. The 13th section of the "Act to incorporate the Illinois Mutual Fire Insurance Company," approved February 23d, 1839, is as follows: "Said company may make insurance for any term not exceeding ten years, and any policy of insurance, issued by said Company, signed by the President and countersigned by the Secretary, shall be deemed valid and binding on said company, in all cases where the assured has a title in fee simple, unincumbered, to the building or buildings insured, and to the land covered by the same; but if the assured have a less estate therein, or if the premises be incumbered, the policy shall be void, unless the true title of the assured, and the incumbrances on the premises be expressed therein." Neither of the policies sued upon, or the applications or representations, which, by the terms of the contracts, are made parts of the policies to which they refer, express that the title of the defendants in error to the land upon which the insured buildings were erected, was less than than an estate in fee simple, or that the same was incumbered; the inference, therefore, must be, that they had an unincumbered estate in fee simple, as otherwise the buildings would not be of an insurable character, and the policies, by the terms of the charter, void.

It is contended on the part of the defendants in error, that the applications and policies were filled up and executed according to the forms furnished by the agents of the plaintiffs in error, and that, consequently, they have no right to complain, and are bound by the contracts, as they appear upon the face of the policies. This doctrine is certainly correct, when applied ordinarily to joint stock marine and fire insurance companies, where the parties assured are not members of the company, but is not applicable to the Illinois Mutual Fire Insurance Company, where the insured as well as the insurers, are, by virtue of the contract of insurance,

and the conditions of the charter, alike members of the Company.

The second section of the charter provides, "that all and every person and persons who shall at any time become interested in said company, by insuring therein, shall be deemed and taken to be members thereof, for and during the term specified in their respective policies, and no longer, and shall at all times be concluded and bound by the provisions of this Act." Both the policies refer to the Act incorporating the Mutual Fire Insurance Company, and the company promise in case of loss or destruction by fire, to pay to the insured, "according to the provisions of the said Act," the sums insured within three months after the said property shall be burnt, &c. Here the charter itself is made a part of the contract, and it will not do to permit the defendants in error, who are also members of the Company, to plead ignorance of its provisions.

The plaintiffs below averred in their declaration that they had *an interest*, in the property destroyed at the time of the execution of the policies, and from thence until the said loss by fire, to a large amount, &c. As to the averment of interest, it is said, that no particular description is necessary to be stated in the declaration, but that it must be apparent from the facts as averred that there is an interest. From an examination of numerous authorities, the result appears to be, that at common law, a policy of insurance is considered in the nature of a contract of indemnity, and though it were declared on without any direct averment of interest, yet the declaration upon its face would import an insurable interest, which must be proved by the plaintiffs at the trial. Sir James Mansfield, when Chief Justice of the Court of Common Pleas, said; "it is incumbent on the plaintiffs to state in the first place in their declaration, and afterwards to make out in evidence a substantial interest; so that if the averment of interest should be stricken out there would be no foundation for the action." 2 Phillips on Insurance, 623, 624. The averment of interest in the property insured, was therefore a material and substantial averment, and, in legal intendment, meant

such an interest or ownership as was insurable under the charter of the Company; and as a less estate than an unincumbered fee simple estate in the land upon which the insured buildings were erected, was not set forth and described either in the applications or policies, according to the 13th section of the Act of incorporation, a fee simple estate will be intended, as otherwise the policies would be void. By the 6th section of the charter it is provided that "insurances shall be made in all cases upon the representation of the assured, contained in his application therefor, which represensation shall in fairness and good faith, state all the material circumstances within his knowledge which may affect the risk," If the insured, therefore, at the time of the insurance, had a less estate than an unincumbered estate in fee simple in the premises, it was their duty to have disclosed that fact to the insurers, as otherwise by the concealment of the true nature of their title, a fraud would be practised upon all the other members of the Company. We think, under the circumstances of this case, that the plaintiffs in error had a right to infer, that the defendants in error had a fee simple estate in the premises, and that in making and delivering the policies they were warranted in believing that their title was of that character. The omission by the defendants in error to state, that they had a less estate than an unincumbered estate in fee simple, in the applications for insurance, so that their true interest in the premises might have been stated in the policies if otherwise, also amounted to a warranty that their title was such as was required by the charter, as otherwise the buildings upon which the insurance was requested, would not have been of an insurable character. This warranty operated as a condition precedent to the assured's right of recovery, and they cannot recover on the policies, without averring and proving, that such condition has been complied with.

In the case of *Stetson v. The Mass. Mutual Fire Ins. Co.* 4 Mass. 337, Sewall, Justice, lays down the law thus: "the estimate of the risk undertaken by an insurer in a policy against loss by fire, must generally depend upon the description of it made by the assured or his agent. A mistake or

omission in his representation of the risk, whether wilful or accidental, if material to the risk insured, avoids the contract; and a warranty being in the nature of a condition precedent, must be fulfilled by the insured, before performance can be enforced against the insurer; and whether the thing warranted was material or not; whether the breach of it proceeded from fraud, negligence, misrepresentation, or any other cause, the consequence is the same. *Columbian Ins. Co.* v. *Lawrence,* 10 Peters, 515; Marshall on Insurance, 335, 339, 347; *Alston* v. *The Mechanics' M. F. Ins. Co.* 4 Hill's (N. Y.) R. 334; *Fowler* v. *The Ætna Fire Ins. Co.* 6 Cowen, 676. So that it appears to be well settled, that, in an action on a policy of insurance against fire, the plaintiff on the trial must prove that he had an insurable interest in the premises before he can recover. *Gilbert* v. *The N. A. Fire Ins. Co.* 23 Wend. 43; *Candler* v. *Rossiter,* 10 do. 488; *Columbian Ins. Co.* v. *Lawrence,* 2 Peters, 25.

Did the plaintiffs prove such an interest in the lot upon which the insured buildings were erected, at the trial in the Court below? The only evidence upon that subject was the parol statement of James H. Woodworth, "that the defendants in error were the owners of the property insured." It is said in 2 Phillips on Ins. 735, 746, that "in regard to a ship or other personal property, possession and other acts of ownership are evidence of interest;" but we have not been able to find any authority in cases of insurance against fire, where the same doctrine has been applied to an interest in land. But admitting that possession in this case could properly be considered as *prima facie* evidence of a fee simple estate in the premises, so as to throw the *onus probandi* upon the plaintiffs in error, has such possession been proved by any of the witnesses to have been in the defendants in error? We think not. Where the possession of land alone is relied upon for any legal purpose, in the absence of paper title, it should, in the language of the law, be a *pedis possessio,* an actual occupancy of the premises in question. *Webb* v. *Sturtevant,* 1 Scam. 181. The witness, Woodworth, says that they were the owners of the property in-

sured, meaning thereby that they were the owners of the buildings and improvements which were insured, and not the land covered by them. The term " owner," or " ownership," as applied to land, according to the authority of the case of *Wright* v. *Bennett,* 3 Scam. 258, means a fee simple estate, and the plaintiff in that case was required to prove such an estate in the lands trespassed upon, before he could entitle himself to a verdict.

Titles to real estate in this State, emanating as they do in all cases in the first instance from the United States by grant or patent, are susceptible of easy proof, and it is imposing no hardship upon the defendants in error to require such proof at their hands, rather than to impose the negative burden upon the plaintiffs in error of showing title out of them. They are supposed to be best acquainted with their own title, they have possession and control of the written evidence to sustain it, and it is but right that they should be required to establish it by the best proofs the nature of the case is susceptible of. It is also proper that the defendants in error should show themselves possessed of a fee simple estate in the premises, for another reason. By the 9th section of the charter, it is provided that "every member of said Company shall be and he is hereby bound to pay his proportion of all losses and expenses happening or accruing in and to said Company; and all buildings insured by and with said Company, together with the right, title and interest of the assured, to the lands on which they stand, shall be pledged to said Company; and the said Company shall have a lien thereon against the assured, during the continuance of his, her or their policies." As every member is bound to pay his due proportion of all losses and expenses which may happen to the Company, they should in all cases, act fairly and honestly towards each other, as otherwise the contributions would be in unequal and unjust proportions. If the estate of the insured be less than a title in fee simple, they should disclose that fact, and cause its true nature to be inserted in the policy; if it be a fee simple estate, they should not consider it a hardship to be required to prove it. The representation ought

always to be fair, and omit nothing which is material for the insurers to know, as the extent of the assured's interest in the real estate is always considered by the insurers, in taking or rejecting the risk, and in estimating the premium; and affords them an opportunity of judging how far the insured may be engaged or interested in guarding the property insured against loss, or may be induced to be careless in order to convert their interest into money.

Upon the whole, we are of opinion that the judgment of the Court below should be reversed, and the cause remanded for the purpose of affording the defendants in error an opportunity of proving to the jury such a title to the land as, according to the 13th section of the charter, would make the buildings, which were upon it, of an insurable character; and to the plaintiffs in error to rebut such proofs by showing either an absence of such title, that it is defective, or that the estate was incumbered by such mortgages or liens as, by the provisions of the charter, would defeat the action.

Judgment reversed with costs, and the cause remanded to the Court below for further proceedings, not inconsistent with this opinion.

*Judgment reversed.*